The Honorable Gilbert Baker State Senator #17 Cooper Lane Conway, AR 72034
Dear Senator Baker:
I am writing in response to your request for an opinion on the following questions:
 1. Does the Arkansas Constitution permit a county to pass an ordinance with the same, or similar language, as Ordinance No. 0-2001-63 [of the City of Conway]?
2. If yes, can the county ordinance be less restrictive?
3. If no, what sections would be deemed unconstitutional?
RESPONSE
The municipal ordinance ("Ordinance") that was submitted with your request addresses various activities and conditions impacting the maintenance and cleanliness of public and private property, and it declares violators guilty of a misdemeanor punishable by a fine of up to $500.00. It is my opinion in response to your first question that several provisions of an ordinance such as this, if enacted by a county, would likely be constitutionally suspect as being contrary to state law. The suspect sections of the Ordinance are identified and discussed below, in response to your third question. Because a conclusive determination may require interpretation of the Ordinance, I suggest that you refer these questions to local counsel to ensure that an ordinance such as this is properly drafted with these issues in mind. It is my opinion that the answer to your second question is "yes" as to the remaining provisions that pass constitutional scrutiny. In my opinion these provisions can be less restrictive than those of the municipal ordinance that was submitted with your request.
Question 1 — Does the Arkansas Constitution permit a county to pass anordinance with the same, or similar language, as Ordinance No. 0-2001-63[of the City of Conway]?
Arkansas Constitution Amendment 55, Section 1(a), provides that "[a] county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by law." Bearing in mind this constitutional principle when reviewing the ordinance in question, I find a potential denial of legislative authority arising from A.C.A. §14-14-805(6) (Repl. 1998), which provides in relevant part:
 Each county quorum court in the State of Arkansas exercising local legislative authority is prohibited the exercise of the following:
* * *
 (6) Any legislative act that defines as an offense conduct made criminal by state law. . . . [Emphasis added.][1]
Counties of course have general authority to prescribe penalties, including fines, for the violations of their local ordinances. See
A.C.A. § 14-14-906. They are also authorized to "secure freedom from dangerous or noxious activities." A.C.A. § 14-14-801(b)(3). In accordance with A.C.A. § 14-14-805(6), however, they may not define as an offense any conduct made criminal by state law. As noted, the submitted Ordinance proscribes various activities and conditions that impact the maintenance and cleanliness of public and private property, and it subjects violations to, inter alia, a fine of up to $500.00. Accordingly, it is necessary to review the Ordinance in light of the various sections of the Arkansas Code that create criminal offenses out of the acts of littering and disposing of solid waste. To the extent the Ordinance defines as an offense the same activity or condition that constitutes a criminal offense under a state environmental statute or regulation relating to littering and solid waste disposal, it would be subject to challenge under Ark. Const. amend. 55, § 1(a), supra if enacted by a county.[2]
I refer you in this regard to the Arkansas Water and Air Pollution and Control Act (A.C.A. §§ 8-4-101 et seq.), the Arkansas Solid Waste Management Act (A.C.A. §§ 8-6-201 et seq.), the Litter Control Act (A.C.A. §§ 8-6-401 et seq.), and the Illegal Dump Eradication and Corrective Action Program Act (A.C.A. §§ 8-6-501 et seq.). According to my review, these state laws may restrain in several respects a county ordinance such as the Ordinance before me. I note as an initial matter that according to Section 4, prosecutions under the Ordinance are "supplemental to any other remedies available under state law, including the Litter Control Act (Ark. Code Ann. § 8-6-401-416)." This on its face is problematic in suggesting that the Ordinance extends state law remedies to the county. A "supplemental act" generally means "[t]hat which supplies a deficiency, adds to or completes or extends that which is already in existence without changing or modifying the original." Black's Law Dictionary 290 (5th ed. 1979). A county cannot "supplement" the state Litter Control Act, or any other state law, by defining as an offense conduct that is criminal under those laws, without violating A.C.A. § 14-14-805(6). Similarly, Section 1(K) of the Ordinance declares as unlawful the maintenance or use of "[a]ny building, structure or other place or location where any activity which is in violation of local, state or federal law is conducted, performed or maintained." Although this provision may not render the Ordinance challengeable on its face, it would be unenforceable in those instances where state law prohibits the same conduct. See, e.g., A.C.A. § 5-66-103 ("[e]very person who shall keep, conduct, or operate . . . any gambling house or place where gambling is carried on . . . shall be deemed guilty of a felony. . . .")
I detect other conflicts under Section 1 of the Ordinance, which addresses conduct in connection with specific items and activities left or maintained on public or private property. Specifically, Subsections B, C, E, F and H deal with matters that are addressed by the Litter Control Act and the Solid Waste Disposal Act. The Litter Control Act makes it unlawful to "drop, deposit, discard, or otherwise dispose of litter upon any public or private property in this state or upon or into any river, lake, pond, or other stream or body of water within this state . . ." A.C.A. § 8-6-406 (Repl. 2000).[3] "Litter" is defined as "all waste material which has been discarded or otherwise disposed of as prohibited in this subchapter, including, but not limited to, convenience food and beverage packages or containers, trash, garbage, all other product packages or containers, and other post consumer solid wastes. . . ." A.C.A. § 8-6-403(10)(A). The act also prohibits the placement of any inoperable vehicle or household appliance upon a highway right-of-way or upon anyone else's private property. A.C.A. § 8-6-408.See also A.C.A. § 20-27-801 (Repl. 2000) (regarding a discarded icebox, refrigerator, or container). These state law provisions would appear to restrain in several respects Section 1B, C, E, F and H of the Ordinance, which prohibit such items, conditions or actions as the presence of rubbish, trash, or inoperable machinery on any property (1B); the storage of an inoperable automobile or the open storage of an icebox, refrigerator, or other appliance for more than seven days (1C and E); throwing litter, rubbish, of any other material along the banks of any stream or drainageway (1F); and the "illegal dumping" of any waste (1H).
The Arkansas Solid Waste Management Act is codified at A.C.A. §§ 8-6-201
through -222. This act in relevant part prohibits the "open dumping of garbage[.]" A.C.A. § 8-6-205(a)(3) (Supp. 2003). It also makes it illegal:
 To dump, deposit, throw, or in any manner leave or abandon any solid wastes, including, but not limited to, garbage, tin cans, bottles, rubbish, refuse, or trash upon property owned by another person without the written permission of the owner or occupant of the property or upon any public highway, street, road, public park or recreation area, or any other public property except as designated for disposal of waste; or
 To sort, collect, transport, process, or dispose of solid waste contrary to the rules, regulations, or orders of the department or in such a manner or place as to create or be likely to create a public nuisance or a public health hazard or to cause or be likely to cause water or air pollution within the meaning of the Arkansas Water and Air Pollution Control Act, § 8-4-101 et seq.
Id. at (4) and (5).
The definition of "solid waste" includes "any garbage or refuse[.]" A.C.A. § 8-6-203(6). Section 1B, F, and H of the Ordinance also address these activities, and as such would be subject to challenge, in my opinion, if enacted by a county.
Reference must be made, finally, to the fact that the Arkansas Water and Air Pollution and Control Act makes it unlawful for any person to "[c]ause pollution, as defined in § 8-4-102, of any of the waters of this state; or . . . [p]lace or cause to be placed any sewage, industrial waste, or other wastes in a location where it is likely to cause pollution of any water of this state[.]" A.C.A. § 8-4-217 (Repl. 2000). This statute calls into question Section 1F of the Ordinance, which purports to proscribe "[t]he pollution of any public well or cistern, stream, lake, canal or body of water by sewage, dead animals, creamery, industrial wastes or other substances." The Ordinance does not define the term "pollution." Consequently, the conflict under this provision, if enacted by a county, would not be as glaring as the ones noted above. It would nevertheless be constitutionally suspect, in my opinion, under Ark. Const. amend. 55, § 1 (a).
Question 2 — If yes, can the county ordinance be less restrictive?
The answer to this question is clearly "yes" as to those provisions of the ordinance that are not contrary to A.C.A. § 14-14-805(6), discussed above.
Question 3 — If no, what sections would be deemed unconstitutional?
See discussion above.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] There is no similar prohibition with respect to municipalities. To the contrary, cities are explicitly empowered to enact ordinances prohibiting and punishing any act that is also a misdemeanor under state law. See A.C.A. § 14-55-501 (Repl. 1998). Counties had this power prior to the enactment of A.C.A. § 14-14-805 (6), supra. See A.C.A. § 14-20-101
(enacted under Act 130 of 1975, providing that "[a] county is authorized to prohibit and punish any act, matter, or thing which the laws of the state make a misdemeanor. . . .") Section 14-14-805 was enacted underAct 742 of 1977, effectively repealing the 1975 statute. See generally Kylev. State, 312 Ark. 274, 849 S.W.2d 935 (1993) (noting the settled rule of statutory construction that if two legislative acts relating to the same subject are in conflict with each other, the later act controls).
[2] I recognize in this regard that there is statutory authority for a county to employ an "environmental officer" who "shall issue citations for violation of any county ordinance prohibiting dumping of waste, garbage, litter, or any hazardous materials throughout the county." A.C.A. § 14-15-102(a) and (b) (Repl. 1998). While this statute clearly contemplates counties prescribing criminal penalties under "ordinances concerning environmental protection," (id. at subsection (c)), it must be concluded that A.C.A. § 14-14-805(6), supra, nevertheless applies in the event a county ordinance purports to define as an offense conduct made criminal by state law.
[3] An exception applies if the property is a permitted disposal site, if the litter is placed in a proper receptacle, or if the person is the owner or lawful tenant of the property and the act does not create a public health or safety hazard or nuisance. Id. at subsections (1), (2) and (3).